The next case called for oral argument is People v. Abel. Counsel, whenever you're ready, you may proceed. May it please the Court, Counsel, I'm Paige Strong. I represent Ed Abel. This appeal is from a verdict, a jury verdict, finding that he was still a sexually dangerous person and should remain committed as a sexually dangerous person. He was originally committed in 2012. He filed his petition for recovery in 2016 and it came to trial in, I believe, early January of 2017. At that stage, it is the State's burden to prove by clear and convincing evidence that the respondent remains a sexually dangerous person. And I'm sure Your Honors have heard many of these cases and you've all lived in the real world and practiced and you know that when we're talking about sexually dangerous people or sexually violent people, it's very emotional, it's very difficult to get a, it's difficult to get a jury of people who are willing to listen to this evidence, and it's a very supercharged, difficult case for everyone involved. And I want that to be kind of kept in the back of your minds when you hear about the evidence in this case. And try to put yourself in the place of the jurors who were hearing evidence that they're not used to hearing every day and hearing about things that are offensive and frightening to them. And keep that in mind. And try to not just rubber stamp their decision as a credibility determination that went against my client. Because it's so much more than that. This is not like an everyday case. This isn't a theft case where there aren't emotions. It's different. And it's important that we all remember that while we're talking about the evidence. In this case, the state presented two witnesses. They presented Dr. Christopher Clouch, who is an evaluator. I believe he works for Wexford. He does lots of these evaluations. And also Jessica Stover, who is a facilitator of the SDP program. She runs several of the groups. Dr. Clouch's opinion was that Mr. Abel still remains a sexually dangerous person. He based that on his interview with Mr. Abel, which was I think about 2 hours and 45 minutes long. But most significantly, he based it on the records of the treatment providers themselves. The group notes, the evaluations that are performed as part of the program. Jessica Stover facilitated several of the groups that Mr. Abel had participated in. Not all of them, but several. And she was familiar with him. And she too agreed that he has not made sufficient progress to no longer be sexually dangerous. That seems like that should be the end of the conversation, shouldn't it? We don't have anything else. We don't have an expert. We don't have anything except for Mr. Abel, who testified in his own behalf. And that's why I want you to look beneath the surface. Beneath what Dr. Clouch and what Jessica Stover testified to. Dr. Clouch says there are several things that he would like to see from a respondent who is committed as a sexually dangerous person before he would find that he is no longer sexually dangerous. One thing he wants to see is does this respondent address his offense? Does he understand what he did? Does he understand why he did it? Dr. Clouch says Mr. Abel doesn't know any of those things. That's odd, because Mr. Abel explained to you exactly why he did what he did. Explained everything. He explained that his initial offenses, which generally were the groping of young women and adult women, usually at a Walmart, he explained why he did that. He was an insecure kid. He would approach a woman. He would smile at a woman. If she smiled back, he thought, well, maybe she likes me, and so he went further. If she didn't smile back, he took that as a rebuff, and sometimes that made him angry, and he would act out. Now, when he testifies to that, at this trial on his recovery petition, he's telling you who he was when he committed those offenses. He's not telling you who he is now. That's who he was then. Ms. Strong, what about the credibility factor that the court needs to give deference to? Absolutely. And that's because, obviously, he did testify the way you're suggesting, but that's not what was testified to by the experts that evaluated him and not what was present in the records. And certainly it's a problem. It's hard for me to get around that credibility argument. That's part of why I wanted to remind you about the emotional nature of this and how the jurors are considering an expert versus what is a pariah of the community, and could they fail? Or whether they didn't believe what he said was possible. Entirely possible. Or what if they did believe it, but because of the emotional impact of these kind of cases, that they couldn't give a fair shake to the direct contradictions in the testimony. And that's what I was going to focus on, but I certainly don't have to go point by point. Dr. Clouch testified about what he would like to see from Mr. Hagel to show that he has improved enough to no longer be sexually dangerous. But he also testified to the two tests that he conducted that are standard, the stable test and the, what is the other one called, the static 99. And I think he said the static 99 was five times more likely to reoffend. And the other one said it was a high probability. Yes. And I don't know how familiar you are with those tests, but they are based on I'm not an expert on it, that's for sure. They're based on historical facts. You're given points based on how many victims you've had. Have you ever had a victim of the same sex? Have you ever had crimes that weren't related to a sexual nature? Have you ever had a long-term romantic partner that you lived with for more than two years? These are historical facts, and that's what makes up the numbers in both the static 99 and the stable. The only thing that can change those numbers is he can become 60 years old, in which case he will be reduced by one point, or he can accomplish enough in treatment that the evaluator decides to knock him down a point or two. But you're saying we should discount and the jury should have discounted those test results? I'm saying that they should not be that persuasive. They're information, but they certainly should not be considered the most dominant. One feature that you'll notice that I brought out in testimony in trial was that those numbers on the static 99 and the stable tests are not about Mr. Abel. They're about people like Mr. Abel, people who fall in his category. They're not specific to him. They're not saying this means Mr. Abel is five times more likely. It means people like Mr. Abel are five times more likely, and that's what's really important. This case is about Mr. Abel, not about people like him. Doesn't that mean, so it's a probability test in effect, and doesn't that go with the credibility, and we have to give some level of deference to the trier of fact? Yes, you have to give some deference to the trier of fact, but you need to place the test results in a hierarchy of what is the most important information about this particular defendant. And since this isn't about this particular defendant specifically, it's interesting information. It shouldn't be ignored. But the more important point is that everything Dr. Conniff said he wanted Mr. Abel to be able to do, Mr. Abel told you and demonstrated in his testimony that he was doing. He not only pled guilty, which shows acceptance of responsibility, he now knows why he did what he did. He told the jury why he did what he did. He told the jury what he had learned to keep him from ever doing it again. And at every turn, Dr. Clounge would say, well, I said that's what I wanted him to do, and he's doing it, but it's not enough. So it's that subjective piece of information that everyone has to rely on, the subjective opinion of Dr. Clounge and Jessica Stover. But that gets you back to the credibility issues, right? It does. It does. So you're asking us really to re-weigh the credibility that was determined by the jury. I'm asking you to compare. Absolutely, there is a credibility evaluation there, but I'm asking you to compare the direct words out of Dr. Clounge's mouth about what he has never seen from the defendant and what the defendant then showed you, the exact same thing. That's not so much credibility. That's almost two versus two. That's not a credibility opinion. Either yes, this happened, or no, this happened. That's not a credibility opinion. Those are just different facts. And the reason that is important in this case is because of the nature of how difficult this is for juries. I also want to point out something I've never seen before. This jury asked four questions before rendering a verdict. Four questions. And they were on-point questions. They weren't like, what time is lunch? They were relevant questions. That suggests that this wasn't easy for them either. If this was an overwhelming case that was a slam-bam, here's the answer, there wouldn't have been four questions. That's significant. It's rare. I think that that should draw our attention to what did they struggle with? And I'll be honest with you, and even Mr. Abel told it in his testimony, he's an awkward dude. He's not suave. He thinks he's pretty smart. He really doesn't like it when people don't think he's smart, but he's very awkward. His testimony, you know, obviously the jurors saw that. It's not something you can ever see. But he did tell us that he has a chip on his shoulder. He's got issues. He's defensive. That's all. So we would ask that you would find that the State did not find, did not prove beyond the clear and convincing evidence that he is still sexually dangerous. Thank you, Counsel. Counsel? Good morning. May it please the Court, Counsel. I'm Assistant Attorney General Jason Kriegel on behalf of the people. And the evidence in this case was more than sufficient for the jury to conclude that Respondent remains a sexually dangerous person. Respondent is asking this Court to hold that the jury was required to credit Respondent's own testimony over that of the two experts who testified that he had not yet recovered. And the issue on this appeal, the only question that's really at issue, is whether he's progressed enough in treatment to no longer be dangerous. And that's what I think Counsel conceded. That's the issue. And on that question, what the experts testified was that he's made some progress in treatment, but there's still a long way to go. And the professionals who evaluate Respondent every six months across 28 different measures of progress. In the last evaluation before this trial, on 27 of the 28 measures, found that he was unsatisfactory or considerable need for improvement. So he just was not there yet. And it's true that these cases could be emotional for the jury in assessing this kind of evidence, but that's true of criminal cases that involve, you know, murders or sex crimes. And the courts have to depend on assuming that jurors do their job. The jurors obviously took this case seriously, and there's no reason to question their credibility determinations in this case. In fact, there's a lot of good evidence to support the determination that they made here. So Respondent argues that he testified that he had admitted his offenses and he understood what led to the offenses, but there was contrary testimony here. So, for example, he, I think the most salient example is he was asked about this incident in 2006 where he molested two little girls. He was living with the mother of the 11-year-old, who's his girlfriend. And he was asked about her 12-year-old friend who was over playing hide-and-seek. And he testified that that didn't have to do with his attraction to young girls. And he didn't even know what this girl's age was. She looked physically mature. That testimony was incredible, and the jury rightly could have rejected it. Respondent also testified that he had learned several strategies in treatment that would allow him to counteract these urges once he was out in the community. And even if the jury believed that, even if they thought he was being sincere about that, there was good reason for them to doubt whether he could really act on these strategies when he was in the community, because there was testimony that he had these mental disorders, which is not contested, that affect his volitional capacity, which means even if he wants to avoid offending, he may not be able to. And there was also testimony that he had a history of substance abuse. So if he's out in the community, if he's drinking alcohol, he may not be able to employ these strategies that he's learned, even if the jury believes him that he has learned these things. So for all these reasons, we would ask the court to affirm. I'm happy to answer any questions if the court has any. I don't believe so. Thank you. Thank you very much. Counsel? Thank you. We appreciate the briefs and arguments, and counsel will take this case under advisement and issue a ruling in due course. Thank you.